**FILED**
**CLERK**

June 16, 2023

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
NORMA JIMENEZ, on behalf of herself
and others similarly situated,

                                        Plaintiff,

                    -against-

S.O.S. MAINTENANCE INC., PETER SEPULVEDA,
and MARIA OTANO,

                                        Defendants.
--------------------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

23-CV-1177 (GRB) (JMW)

Matthew John Farnworth, Esq.
Peter Arcadio Romero, Esq.
**Law Office of Peter A. Romero, P.L.L.C.**
490 Wheeler Road, Ste 250
Hauppauge, NY 11788
*Attorneys for Plaintiff*

Joshua S. Androphy, Esq.
Lawrence F. Morrison, Esq.
**Morrison and Tenenbaum, P.C.**
87 Walker St., Ste 2
New York, NY 10013
*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

        Plaintiff Norma Jiminez brings the instant action against her former employers S.O.S.

Maintenance Inc. ("S.O.S"), Peter Sepulveda, and Maria Otano (collectively, "Defendants") for

alleged violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §201 *et*

*seq.*, ("FLSA") and the New York Labor Law, Article 19, § 650 *et seq*. and New York State

Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("NYLL").  (DE 8.)  Solely as to the

first cause of action for failure to pay overtime in violation of the FLSA, Plaintiff seeks to

proceed as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and similarly

1

situated persons "who are currently or have been employed by Defendant as a customer service representative at any time during the three (3) years prior to the filing of their respective consent forms."  (DE 8 at ¶ 30.)

Before the Court is Plaintiff's motion to conditionally certify this case as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b).  (DE 12.)  For the reasons that follow, Plaintiff's motion is granted as to certification and the proposed Notice is modified as indicated herein.

## I.      RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed the Initial Complaint on February 13, 2023 and, Defendants answered on February 16, 2023.  (DE 1; DE 5.)  Plaintiff then filed the Amended Complaint on March 9, 2023.  (DE 8.)  Defendants moved for a pre-motion conference to file a motion to dismiss the fourth and fifth claims of the Amended Complaint, which sought damages for NYLL wage notice and wage statement violations.  (DE 9.)

The Honorable Gary R. Brown referred the case to mediation and denied the motion without prejudice to renewal following the conclusion of mediation.  (Electronic Orders dated March 22, 2023.)  In light of the referral to mediation, the undersigned adjourned the initial conference *sine die*.  (Electronic Order dated March 23, 2023.)  Thus, no formal discovery has taken place in this action.

Plaintiff subsequently requested an adjournment of the mediation until after Plaintiff's motion for conditional certification was resolved.  (DE 11.)  That request was granted and mediation was stayed pending resolution of Plaintiff's anticipated motion.  (Electronic Order dated April 9, 2023.)  The fully briefed motion was filed on May 2, 2023.  (DE 12-14.)

Defendants oppose the motion.  (DE 13.)  The parties appeared for oral argument before the undersigned on June 15, 2023.  (DE 15.)

## II.      FACTUAL BACKGROUND

The following allegations are taken from Plaintiff's Amended Complaint (DE 8) and her declaration (DE 12-7) in support of her motion for conditional certification.[1]  Plaintiff brings this lawsuit against Defendants on behalf of herself and all other persons who are similarly situated during the applicable FLSA limitations period who also suffered damages from Defendants' alleged violation of the FLSA.  (DE 8 at ¶ 24.)  Specifically, Plaintiff brings her First Claim for Relief for FLSA overtime violations, on behalf of herself and similarly situated persons who are currently or have been employed by the Defendant as a customer service representative at any time during the three years before filing their respective consent forms.  (DE 8 at ¶ 30.)

Plaintiff was an employee of Defendant S.O.S., a domestic corporation in the facilities maintenance industry, as a customer service representative from September 2019 through January 2023.  (DE 8 at ¶¶ 6-8; DE 12-7 at ¶ 3.)  S.O.S had a gross annual revenue of at least $500,000 during the relevant period and provided services to and received payments from out-of-state customers.  (DE 8 at ¶ 9.)  Peter Sepulveda and Maria Otano were shareholders and/or officers of S.O.S., with authority to make payroll and personal decisions and were active in day-to-day management of S.O.S including the determination of wages.  (*Id.* at ¶¶ 10-11.)

Plaintiff's employment duties included clerical duties related to her customer service role such as supplying product or service information, generating sale leads, forwarding customer information to the dispatch team, handling customer complaints, maintaining customer

---

[1] Plaintiff's pleadings, affidavits, and declarations are considered in determining whether preliminary certification is appropriate.  *See Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016) (citation omitted).

interaction records, processing customer accounts, collecting documents from vendors, and filing documents.  (*Id.* at ¶ 12.)  Employees were responsible for handling, selling, or working on materials that moved in or were produced for commerce, and were involved in building maintenance, used tools, equipment, mops, solvents, waxes, cleaning supplies and other materials, several of which originated in other states.  (*Id.* at ¶ 9.)

Defendants required Plaintiff to work from 8:00 a.m. to 5:00 p.m., Monday through Friday, and from 8:00 a.m. to 5:00 p.m. one Saturday each month.  (DE 8 at ¶¶ 15-16; DE 12-7 at ¶ 4.)  Plaintiff regularly worked more than forty hours, typically forty to forty-eight hours each workweek under her regular schedule.  (DE 8 at ¶ 9; DE 12-7 at ¶ 4.)  Additionally, Defendants required Plaintiff to work on-call one week each month, where Plaintiff was required to work from 7:00 p.m. to 12:00 a.m., Monday through Friday, and the entire day Saturday and Sunday.  (DE 8 at ¶ 17; DE 12-7 at ¶ 5.)

During on-call shifts, Plaintiff was required to remain in constant contact with Defendants through an on-call group text chat, and if Plaintiff took more than fifteen minutes to respond after being contacted, she was subject to reprimand.  (DE 8 at ¶ 19.)  Plaintiff maintains that her personal time was limited during the on-call shifts since she was not free to complete her personal business or use her time effectively.  (DE 8 at ¶ 18.)  If Plaintiff left her house, she needed to take a computer with her to continue to update the Defendants or the Defendants' clients through their web portals.  (*Id.*)  While on-call, Plaintiff responded to approximately five to twenty calls each day, was required to follow up on each call, to ensure that vendors were approved, and to keep constant contact with vendors and clients to verify that their jobs were completed.  (*Id.*)

Defendants did not compensate Plaintiff for the hours she worked in excess of 40 hours a week or for her on-call hours each month.  (DE 8 at ¶¶ 20-23.)  Defendants paid Plaintiff a yearly salary of $47,840.00.  (DE 8 at ¶ 21.)  Defendants paid Plaintiff a flat rate of $150.00 for each on-call week from September 2019 through April 2022, and a flat rate of $250.00 for the remainder of Plaintiff's employment.  (DE 8 at ¶ 23; DE 12-7 at ¶ 7.)  Defendants did not pay Plaintiff any additional compensation for the additional five hours she worked on one Saturday each month.  (DE 8 at ¶ 22.)

Defendants treated all customer service representatives in the same manner.  (DE 8 at ¶ 24.)  There was a high rate of turnover for customer service representatives because they became "frustrated" with Defendants' practice of failing to pay overtime and/or adequately pay for on-call hours.  (DE 12-7 at ¶ 12.)  As a result, many employees worked for only one to two weeks before leaving.  (*Id.*)

Defendants employed at least four other customer service representatives who performed the same or similar duties at any given time, including but not limited to Rose Moscatiello, Denice Whyte, Yasmeen Aly, and Jesica Herrera.  (DE 12-7 at ¶ 8.)  Plaintiff herself witnessed other customer service representatives work more than forty hours per week as representatives regularly worked shifts together.  (DE 12-7 at ¶ 9.)  Plaintiff also knows other customer service representatives did not get paid overtime after forty hours a week because employees discussed this amongst themselves.  (DE 12-7 at ¶ 10.)  Moreover, Plaintiff knows that other customer service representatives performed the same on-call duties each week because Plaintiff would receive emails indicating which employee was on-call that week.  (DE 12-7 at ¶ 9.)

### III.   THE LEGAL FRAMEWORK

A plaintiff bringing a claim under 29 U.S.C. § 206 (Minimum wage) and/or 29 U.S.C. § 207 (Maximum hours), may proceed under § 216(b) "for and in behalf of himself or themselves and other employees similarly situated[,]" or what is known as a collective action.  *Rivera v. Harvest Bakery Inc.*, No. 13-CV-00691 (ADS)(GRB), 2014 WL 3611831, at *2 (E.D.N.Y. July 7, 2014) (quoting 29 U.S.C. § 216(b)).  "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court."  *Id.* at *3 (citation omitted).

Under the FLSA, a collective action differs from a typical class action in that it does not require numerosity, commonality, typicality, and adequate representation.  *Id.* at *2 (citations omitted).  "Because it is discretionary, a motion for conditional certification involves a far more lenient standard than a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure."  *Diaz v. Weinstein Landscaping*, No. 19-CV-06050 (JMA)(ST), 2022 WL 801493, at *3 (E.D.N.Y. Feb. 28, 2022) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2022 WL 801322 (E.D.N.Y. Mar. 16, 2022; *see also McDermott v. Fed. Sav. Bank*, No. 14-CV-6657 (JMA)(GRB), 2016 WL 11531717, at *2 (E.D.N.Y. May 20, 2016) ("Given the relatively narrow consequence of conditional certification, the standard for collective action under the FLSA has been described as "'fairly lenient.'"), *aff'd as modified*, 2018 WL 1865916 (E.D.N.Y. Apr. 18, 2018).

In this Circuit, collective action certification is analyzed using a two-step process: *first,* conditional certification, which usually takes place before significant discovery; and *second*, after discovery, the court determines whether the claimants are similarly situated, and if so the collective action proceeds to trial -- otherwise the class is decertified, opt-in plaintiffs' claims are

dismissed without prejudice, and the class representatives may proceed on their own claims. *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99-100 (E.D.N.Y. 2014). Here, the subject motion concerns just the first step. That is, whether the proposed opt-in plaintiffs are "similarly situated" warranting conditional certification. The burden on the first step is minimal. The analysis only requires a "modest factual showing sufficient to demonstrate that [plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* at 99 (citing *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 321 (E.D.N.Y. 2012)).

At this stage, a named plaintiff need only show that a "factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs." *Id.* (citing *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012)). "[N]othing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan is required." *Sexton v. Franklin First Fin. Ltd.*, No. 08-CV-04950 (JFB)(ARL), 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (citation omitted). However, a modest factual showing is not satisfied through unsupported assertions or conclusory allegations. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citation omitted). Sufficient facts particular to the claims should be pleaded in order for the court to make a reasoned determination.

With that said, "[a]n FLSA collective action must be conditionally certified as long as the plaintiff['s] allegations are sufficient on their face to support certification – even if such allegations conflict with the account asserted by the defendants." *Valdez v. MichPat & Fam, LLC*, No. 20-CV-2570 (AMD)(SIL) 2022 WL 950450, at *3 n.3 (E.D.N.Y. Mar. 30, 2022) (internal quotation marks and citation omitted.) Courts consider preliminary certification based on the pleadings, affidavits, and declarations a plaintiff submits. *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016) (citation omitted). "[C]ourts do not resolve factual

disputes, decide ultimate issues on the merits, or make credibility determinations at the first stage." *Id.* (alteration in original) (internal quotation marks and citation omitted).

## IV.    <u>DISCUSSION</u>

### A.  **Conditional Certification**

In light of the allegations of the Amended Complaint and the statements in the declaration, the Court "may infer that other [customer service representatives] worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA." *Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17-CV-7066 (DF), 2019 WL 699179, at *8 (S.D.N.Y. Feb. 5, 2019); *see also Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 363-64 (E.D.N.Y. 2007) ("In the present posture of the case, [it is not the Court's function to decide], that the potential class members are, in fact, similarly situated or whether the practices or policies complained of, in fact, do exist.").

Defendants argue that Plaintiff fails to show that she is similarly situated to other employees with respect to her pay.  (DE 13 at 4.)  Defendants argue that Plaintiff does not claim other employees worked the same schedule as she did or that she has knowledge of other's hours, and has not identified which employees she spoke with including when and where she spoke with them or how the employees were paid.  (DE 13 at 4.)  In short, Defendants argue that Plaintiff has not sufficiently demonstrated she was paid similarly to other customer service workers since she has not adequately shown the basis for her knowledge of those employee's compensation.  (DE 13 at 4.)

However, Plaintiff alleges that many employees quickly left their jobs because of their frustration with the lack of overtime pay.  (DE 12-7 at ¶ 12.)  She also alleges she is aware of the similarly situated workers because employees discussed these issues amongst themselves, she

personally witnessed employees working over forty hours since she regularly worked similar shifts with some of those employees, and she received emails that noted which employees were working on-call hours in a given week.  (DE 12-7 at ¶¶ 8-10.)  Further, contrary to Defendants assertions, Plaintiff identifies four customer service representatives by full name -- Rose Moscatiello, Denice Whyte, Yasmeen Aly, and Jesica Herrera -- that performed either the same or similar duties as Plaintiff at any given time.  (DE 12-7 at ¶ 8.)  Plaintiff's allegations are sufficient at this stage.

The court in *Genxiang Zhang*, highlighted the fact that Plaintiff, a delivery worker, described conversations he had with several other current and former delivery workers, that he specifically identified several of the employees, and that based on those conversations it was Plaintiff's understanding that those employees were also being paid below minimum wage and not receiving spread-of-horus pay.  *See Genxiang Zhang*, 2019 WL 699179, at *9.  The court noted that "[c]ourts generally find affidavits from named plaintiffs, attesting to their personal knowledge coworkers were subject to similar employment practices as they were, to be sufficient to certify collective actions[,]" and held that plaintiff's assertions "regarding his conversations with other delivery workers further bolster[ed]" the determination that it was appropriate to certify a collective of delivery workers.  *Id*.  This reasoning is particularly apt at the conditional certification stage here.

Defendants generally point to *Reyes v. Picnic Basket, Inc.*, No. 18-CV-0140 (VEC), 2018 U.S. Dist. LEXIS 199037, *5 (S.D.N.Y. May 22, 2018), and *Mata v. Foodbridge LLC*, No. 14-CV-8754 (ER), 2015 WL 3457293 (S.D.N.Y. June 1, 2015) *inter alia*, but these cases are markedly dissimilar from the instant case.  In *Reyes*, the plaintiffs failed to, *inter alia*, provide any details of their observations and conversations including when workers arrived and left work

9

and simply relied on their belief that Defendants maintained a violative compensation scheme. *See Reyes*, 2018 U.S. Dist. LEXIS 199037, *5.  Thus, the plaintiffs had not sufficiently "demonstrated the basis of their knowledge" as to the other employee's compensation and hours. *Id*.  In *Mata*, the court found that plaintiff failed to include any concrete facts indicating wage and hour violations for employees "engaged in different job functions" and plaintiff's exclusive reliance on "observations and conversations" with others was insufficient where the motion was supported by a "lone affidavit of a single employee, who performed a single job function." *Mata*, 2015 WL 3457293, at *3-4.

Unlike in *Mata*, Plaintiff is not relying only on observations and conversations to support wage and hour violations for an overly broad class of employees working a range of different positions than Plaintiff.  And unlike in *Reyes*, Plaintiff has alleged more detail that supports the basis of her knowledge than her belief of a scheme on the part of Defendants.  Plaintiff seeks certification only as to similarly situated employees that worked the same job function as her -- customer service representatives -- and she alleges to have actually worked over forty hours with those employees, identified four of them by full name.  (DE 14 at 2-3.)  Plaintiff also alleges that she received emails from Defendants indicating exactly which employees were working on-call hours each week -- in addition to having conversations with her fellow employees about Defendants pay practices including the lack of overtime and/or on-call pay during those shifts. (DE 14 at 2-3.)

For example, Plaintiff notes that she regularly worked together with other customer service representatives on the same shifts for over forty hours and also had conversations with them in "the final few months" of her employment (which ended in January of 2023), "typically on Saturdays" when they "would complain" about not being paid the requisite overtime "despite

working the extra day." (DE 12-7 at ¶¶ 9-10.) Plaintiff's allegations specifically note that Plaintiff and others were required to work these "on-call hours." *Cf. Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 83 (E.D.N.Y. 2008) (noting that despite the "little, if any, documentary support" for his allegations, the case involved "allegations of time worked off the clock[,] thus it would be unlikely that defendants would have kept records of that time, and defendant ha[d] not submitted an affidavit refuting the accuracy of plaintiff's allegations regarding the lunchtime work" (internal quotation marks omitted)).

Courts in this district have found allegations of a similar detail sufficient to satisfy a plaintiff's low evidentiary burden at this stage. *See, e.g.*, *Neris v. R.J.D. Constr., Inc.*, No. 18-CV-1701 (ADS)(AKT), 2019 WL 1458239, at *5 (E.D.N.Y. Mar. 29, 2019) (plaintiff alleged that plaintiff "personally witnessed co-workers working more than 40 hours each week because he worked with them," "co-workers discussed the lack of overtime amongst themselves" and that plaintiff knows others were similarly situated because they all completed and signed two separate time sheets); *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07-CV-5062 (FB)(SMG), 2008 WL 2622929, at *2 (E.D.N.Y. June 30, 2008) (plaintiff alleged that defendants failed to maintain time records and that he observed co-workers that engaged in the same or similar duties working more than forty hours but did not identify any other employees).

Accordingly, the Court finds that Plaintiff has sufficiently shown that the other customer service representatives were subject to the same alleged FLSA violations as Plaintiff for the purposes of the first step of conditional certification.

### B. Notice

After "a court determines that a named plaintiff has demonstrated that he or she is similarly situated to other employees of the defendant with respect to the defendant's alleged

unlawful policy[,]" the court may authorize issuance of a notice to inform potential plaintiffs that they may opt into the lawsuit. *Wang v. Kirin Transportation Inc.*, No. 20-CV-5410 (KAM)(TAM), 2022 WL 79155, at *10 (E.D.N.Y. Jan. 7, 2022) (citing *Genxiang Zhang*, 2019 WL 699179, at *6). The district court possesses broad discretion in authorizing what form notices should take. *Id.*

Here, Plaintiff attaches a proposed notice, reminder notice, email, and text message (collectively, "Notice") to which Defendants request a few changes in the event the motion for conditional certification is granted. (DE 12-3:DE 12-4; DE 12-5; DE 12-6; DE 13 at 4-5.) Each point of contention is addressed in turn below.

### i. *Returning Consent Forms*

The Notice provides a sixty-day opt-in period, which Defendants do not oppose. *See Hernandez v. Immortal Rise, Inc.*, 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012) (noting the "common practice under the FLSA" of a sixty-day notice period); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014) ("Courts in this Circuit routinely restrict the opt-in period to 60 days."). However, the Notice currently advises opt-in plaintiffs to return the consent form to Plaintiff's counsel and not to write to or call the Clerk of the Court. (DE 12-3 at 3-4, 5.)

Defendants ask that the consent forms be returned directly to the Clerk of the Court instead of Plaintiff's counsel to avoid disputes over timeliness and so potential plaintiffs are aware they can hire their own counsel rather than being influenced by having to return the form to plaintiff's counsel. (DE 13 at 4.) Plaintiff argues that given the "budgetary constraints and financial limitations" of federal courts, it makes practical sense for the consent forms to be sent to plaintiff's counsel who has an incentive to file quickly in order to avoid statute of limitations issues and can quickly do so electronically. (DE 14 at 12.) Further, Plaintiff notes that any

undue influence is mitigated by the disclaimer in the notice that opt-in plaintiffs do not have to be represented by Plaintiff's counsel's law firm.  (DE 14 at 12 n.3.)

Although the disclaimer language in the notice makes it such that there is "only a minimal risk that opt-in plaintiffs will be discourage[d] from seeking their own counsel," that risk remains to some extent.  *Limarvin v. Edo Rest. Corp.*, No. 11-CV-7356 (DAB), 2013 WL 371571, at *3 (S.D.N.Y. Jan. 31, 2013).  Given that the "common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel," the proposed Notice is approved on the condition that Plaintiff's counsel modifies the Notice to require it to be returned to the Clerk of the Court.  *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 462 (E.D.N.Y. 2014) (collecting cases); *see also Hernandez v. Fresh Diet Inc.*, No. 12-CV-4339 (ALC)(JLC), 2012 WL 5936292, at *2 (S.D.N.Y. Nov. 21, 2012) ("[T]he consent forms should be returned to the Clerk of the Court in order to ensure that opt-in Plaintiffs understand that they may choose their own counsel without being influenced by having to return the form to Plaintiffs' counsel.").

**ii.**       ***Applicable Statute of Limitations Period***

Under the FLSA, the statute of limitations is ordinarily two years, unless the claim arises from a willful violation, in which case the statute is extended to three years.  *Diaz*, 2022 WL 801493, at *6; *see also* 29 U.S.C. § 255(a).  "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class."  *Id.* (quoting *Jie Zhang v. Wen Mei, Inc.*, No.14-CV-1647 (JS)(SIL), 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015)).  Here, the three-year statute of limitations under the FLSA applies since the Amended Complaint (DE 8) alleges willful conduct by Defendants. *See Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 74 (E.D.N.Y. 2016) (holding that at the

conditional certification stage of the FLSA proceedings, a three-year statute of limitations applied because the complaint alleged willful conduct by defendants).  It should also be noted that this case includes state law NYLL claims as well, and those have a six-year statute of limitations.  8 U.S.C. § 1367.

Plaintiff asks for a six-year statute of limitations period running from February 13, 2017 to the date the complaint was filed on February 13, 2023 (DE 12-1 at 14), while Defendants argue that a three-year period should apply (DE 13 at 5).  Plaintiff stakes her request in efficiency and judicial economy.  (DE 12-1 at 14.)  Courts in this district have found that judicial economy is best served by a six-year statute of limitations where *both* FLSA and NYLL claims are involved.  *See Cohan v. Columbia Sussex Mgmt.*, No. 23-CV-3203, 2013 WL 8367807, at *9 (E.D.N.Y. Sept. 19, 2013), *aff'd*, 2016 WL 1045532 (E.D.N.Y. Mar. 15, 2016) (collecting cases); *Neris v. R.J.D. Constr., Inc.*, No. 18-CV-1701 (ADS) AKT), 2019 WL 1458239, at *5 (E.D.N.Y. Mar. 29, 2019) (same).  The oft-cited reasoning is that "where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims."  *Cohan*, 2013 WL 8367807, at *9.

On the other hand, Defendants aver that Plaintiff has only sought collective certification of her FLSA claim and, when there is no pending collective certification motion as to the NYLL claims, a three-year statute of limitations is more appropriate.  (DE 13 at 5-6.)  Although there appears to be a divide in the way courts in this Circuit have approached the issue, the reasoning proffered by Defendants reflects the "more recent trend" followed in this district.  *See Nyarko v. M&A Projects Restoration Inc.*, No. 18-CV-05194 (FB)(ST), 2021 WL 4755602, at *11 (E.D.N.Y. Sept. 13, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL

14

4472618 (E.D.N.Y. Sept. 30, 2021).  In similar situations, courts have found the rationale used

by cases allowing only a three-year period more persuasive in order to "avoid the confusion

caused by notifying plaintiffs who potentially have two disparate claims under federal and state

wage and hour laws with different statutes of limitations, along with the inefficiency of

providing notice to plaintiffs whose claims may well be time-barred under the FLSA."  *Id.*

(quoting *Alvarado v. GC Dealer Servs. Inc.*, No. 18-CV-2915 (SJF)(SIL), 2018 WL 6250994, at

*4 (E.D.N.Y. Nov. 29, 2018); *Desir v. NYU Langone Health Sys. & Nicole Reiss*, No. 19-CV-

8144 (JPC)(SLC), 2020 U.S. Dist. LEXIS 194837, *18 (S.D.N.Y. Oct. 19, 2020) (same).  The

Court finds this rationale more persuasive especially since Plaintiff has moved for conditional

certification of only her FLSA claim.  *See Nyarko*, 2021 WL 4755602, at *11 (same).

    Accordingly, Plaintiff is directed to revise the Notice so that it reflects February 13, 2020

rather than February 13, 2017.

### iii.    *Does Equitable Tolling of the Statute of Limitations Apply?*

    The parties dispute whether blanket equitable tolling is warranted in the instant case.

In FLSA collective action cases, "the limitations period continues to run for each plaintiff until

he or she files written consent with the court to join the lawsuit."  *Viriri v. White Plains Hosp.

Med. Ctr.*, 320 F.R.D. 344, 355 (S.D.N.Y. June 8, 2017) (citation omitted).  However, "[a]

district court may toll the statute of limitations period to avoid inequitable circumstances . . . ."

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citation omitted).  Plaintiff

seeks equitable tolling from the date of the instant motion (May 2, 2023) until the motion has

been resolved and notice is sent to the potential opt-in plaintiffs.  (DE 12-1 at 18.)  Defendants

oppose this request on the basis that Plaintiff has simply not demonstrated that the requirements

for equitable tolling have been met.  (DE 13 at 5-6.)

To determine whether application of such tolling is justified, a district court looks to whether the party requesting the application (1) has acted with reasonable diligence during the time period they seek to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply. *Zerilli-Edelglass v. N.Y.C. Trans. Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).  "The Second Circuit has cautioned that equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstance[s] . . . ." *Katz v. Equinox Holdings, Inc.*, No. 20-CV-9856, 2022 WL 2952143, at *2 (S.D.N.Y. July 26, 2022) (alteration in original) (internal quotation marks omitted) (citing *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)).

As the Court has previously noted, there appears to be a divide in this Circuit as to *whose* diligence should be considered -- the named plaintiff or the potential opt-in plaintiffs.  *See Watterson v. RUI Mgmt. Servs., Inc.*, No. 20-CV-1783 (GRB)(JMW), 2022 WL 3867755, at *9 (E.D.N.Y. Aug. 30, 2022).  Nonetheless, Plaintiff has not explained why equitable tolling should apply on a blanket basis to all potential opt-in plaintiffs.  Indeed, at oral argument, Plaintiff's counsel conceded that a case-by-case approach makes sense at this juncture.  As in *Watterson*, the Court finds that "the Court cannot assess whether any potential opt-in plaintiff diligently pursued their rights because Plaintiff has not provided any information as to potential opt-in plaintiffs, how they exercised reasonable diligence, and how they were prevented from exercising their rights."  *Id.* (internal quotation marks omitted).

16

Accordingly, Plaintiff's request for a blanket equitable tolling of the statute of limitations

for all opt-in plaintiffs is denied without prejudice to potential opt-in plaintiffs seeking equitable

tolling on a case-by-case basis.[2]

### iv.    *Method and Location of Notice*

Defendants raise objections to two additional portions of the proposed Notice.  (DE 13 at

6.)  Defendants object to the Notice being posted, at their office locations and to the Notice being

sent by email and text message.  (*Id*.)  Defendants argue these measures provide little marginal

value and are unnecessary.  (*Id*.)

First, Defendants note that requiring notice on their business premises "would burden

their business with unnecessary publicity of a lawsuit against them."  *Canelas v. Frank & Nino's*

*Pizza Corp.*, No. 19-CV-6105 (VEC), 2020 U.S. Dist. LEXIS 82980, *8 (S.D.N.Y. May 11,

2020).  Well, the reason that courts in this Circuit "routinely approve requests to post notice on

employee bulletin boards and in other common areas, even where potential members will also be

notified by mail, because it maximizes potential plaintiffs' opportunities to be informed of the

pendency of the litigation and consider whether to opt in."  *Abdulzalieva v. Advanced Domino,*

*Inc.*, No. 21-CV-124 (BMC), 2021 WL 1648024, at *5 (E.D.N.Y. Apr. 27, 2021) (quoting

*Beaton v. Verizon New York, Inc.*, No. 20-CV-672, 2020 WL 5819902, at *6 (E.D.N.Y. Sept. 30,

---

[2] While the undersigned is mindful that some Courts have found motions regarding equitable tolling to be dispositive, the Court does not find this to be such an instance.  *See Chen-Oster v. Goldman, Sachs & Co.*, 10-cv-6950 (AT) (RWL), 2021 WL 5106528, at *3 (S.D.N.Y. Nov. 3, 2021) (comparing a court's decision as to whether any named or absent class member's claims are barred by the statute of limitations, which is dispositive, with a court's decision as to whether the statute of limitations should be tolled prospectively for a period of time for those class members who have been compelled to arbitrate even though they have long been class members and that have not yet received formal notice that they have been excluded from ruling a claim, which is non-dispositve); *Cf. McDermott*, 2018 WL 6718599, at * 1, 1 n.1 (finding that decision as to whether equitable tolling applied was dispositive where procedural posture was such that notice had already been provided to the movants – the potential opt-in plaintiffs – more than three years after the termination of their employment with defendants, and thus the three-year FLSA statute of limitations was already established as expired).

2020); *Rosa v. Dhillon*, No. 20-CV-3672 (BMC), 2020 WL 7343071, at *9 (E.D.N.Y. Dec. 14, 2020) (same).

Though Defendants concern is valid, Plaintiffs' request for notice to be posted "in a conspicuous place at collective members' work locations" during the pendency of the notice period does not require notice to be conspicuous to the public.  (DE 14 at 9.)  For example, notice may be posted in the office kitchen or break room so that it is conspicuous to the workers but not to the public -- which largely resolves the concern of any potentially negative publicity.  (DE 14 at 9.)

Accordingly, Defendants are to post the Notice and consent to join the lawsuit, as otherwise amended in accordance with this Order, in both English and Spanish in a conspicuous place in their office locations during the duration of the notice period.  *See Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (noting that courts ordinarily "permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs.").

Second, Defendants argue that receiving the Notice by email and text message in addition to the other methods such as an original mailing and email reminders, "would be overly coercive."  (DE 14 at 6.)  However, "[c]ourts in this Circuit have consistently allowed plaintiffs to send out collective notice via electronic means, including e-mail and text message."  *Tlapanco v. City Metal Traders, Inc.*, No. 21-CV-06341 (BMC), 2023 WL 2240396, at *5 (E.D.N.Y. Feb. 27, 2023).  This practice in today's world makes good sense.  Today, even where mail is contemplated, email and text message are undoubtedly more likely to reach a potential opt-in plaintiff than mail alone.  *See Wilson v. Jamaica Serv. Program for Older Adults, Inc.*, No. 21-CV-1263 (BMC), 2021 WL 4750098, at *6 (E.D.N.Y. Oct. 12, 2021) ("[E]mail notification is

more effective at notifying potential opt-in plaintiffs than mailed notice alone."). Accordingly, this objection is overruled.

**<u>CONCLUSION</u>**

For the reasons stated above, Plaintiff's motion for conditional certification of the FLSA claim as a representative collective action pursuant to 29 U.S.C. § 216(b) is granted in part and denied in part as follows: (1) Plaintiff's FLSA claim is certified as a representative collective action for all; (2) Plaintiff is directed to revise the Notice as to the following; (a) to reflect a three-year statute of limitations beginning February 13, 2020; (b) to reflect that the consent forms are to be provided to the Clerk of the Court rather than to plaintiff's counsel; and (3) Plaintiff's request for the statute of limitations to be equitably tolled is denied without prejudice to potential opt-in plaintiffs seeking equitable tolling on a case-by-case basis.

Dated: Central Islip, New York
      June 16, 2023

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

19